UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM HEATH COOK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00732-CMS |
| | ) | |
| RICHARD ADAMS, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Petitioner William Heath Cook's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1), Petitioner's Request for Summary Judgment (Doc. 21), Petitioner's Pro Se Motion for Summary Judgment (Doc. 22), and Petitioner's Pro Se Request for Hearing (Doc. 23). For the reasons stated below, the petition and all three motions are **DENIED**.

## BACKGROUND

### I. Factual and Procedural Background

In 2018, Petitioner was sentenced to 20 years' imprisonment for first-degree robbery as a prior offender in the Circuit Court of Butler County, Missouri. (Doc. 20 at Ex. B).

On direct appeal, the Missouri Court of Appeals summarized the evidenced at trial as follows:

> On February 14, 2018, a robbery occurred at a Break Time Convenience store. [Victim] was working alone there that evening as a store clerk. At 10:41:08 p.m., a man wearing a blue hoodie and jeans entered the store. The man approached [Victim] and said, "Hey, check this out" and "[g]ive me the fucking money. Come on dog." The man poked [Victim] with something that "felt hard and cylindrical like a gun barrel." [Victim] believed the man might have a gun in his pocket. [Victim] removed the cash from the register and gave it to the man. At 10:41:42 p.m., the man left the store with the cash.

During the encounter, the man was, at most, a couple of feet away from [Victim]. The inside of the convenience store was "well lit" with "lights every three feet." [Victim] was able to view all portions of the man's face "from the eyes down." [Victim] did not "look him right in the eye for a long period, but [] did make sure to look at him so that [he] could ID him correctly…."

Break Time had a surveillance system that recorded multiple angles of the incident, including footage of the suspect inside the store and footage of the suspect outside the store without his hoodie.

[Detective] Mills responded to the store after the robbery. He spoke with [Victim] and viewed the surveillance video. [Detective] Mills took screen shots of the suspect from the surveillance footage. The screenshot was distributed to other officers at the department for the purpose of developing a suspect.

That night, the police canvassed the neighborhood to determine if there was any evidence left behind, but located nothing. The neighborhood was canvassed again the following morning.

During the evening of February 15, a police officer saw [Petitioner] walking about two miles from Break Time. [Petitioner] was wearing jeans, a yellow t-shirt, and boots similar to the suspect in the surveillance footage. [Petitioner] was detained and [Detective] Mills arrived on scene. The jeans had a white label on the right pocket as well as a loop on the right hip. These jeans stood out to [Detective] Mills because they were "the exact same pair of blue jeans that [he] saw in the robbery [surveillance footage]. They had a loop and a white imprint on the buttocks." [Petitioner]'s jeans, boots, and t-shirt were collected by [Detective] Mills.

[Petitioner] was cooperative and agreed to an interview. The interview was recorded. During the interview, [Detective] Mills told [Petitioner] he knew the man's voice on the surveillance video was [Petitioner]'s voice because "[he has] known [Petitioner] for a long time." [Detective] Mills also indicated he was familiar with his "raspy" voice: "You have a raspy voice, you always had one….You deal with certain people and you can tell that voice." [Detective] Mills asked [Petitioner], "You know, how many times you been in trouble?" [Petitioner] responded, "I have never in my life ever did that right there….It's not what I do[.]" [Detective] Mills stated to [Petitioner], "I don't railroad people and I've never railroaded you." [Detective] Mills mentioned in the interview that he knew [Petitioner] was "trying hard" and had "always told [him] the truth" before. [Petitioner] denied involvement in the robbery.

[Detective] Mills took photographs of [Petitioner] during the interview. One photograph was a full body image that showed [Petitioner] holding up the yellow shirt, while wearing the blue jeans and boots.

> [Petitioner] was charged with the Class A felony of robbery in the first degree and the case proceeded to jury trial. Before trial, [Petitioner] filed a motion in limine to prohibit evidence of [his] prior uncharged bad acts, prior convictions, and arrests that did not result in a conviction.
>
> At trial, [Detective] Mills testified that the still photos showed the "suspect whom I believe to be [Petitioner] prior to the robbery walking into [the convenience store]." He also testified the still photos from the surveillance video showed [Petitioner] walking in the store, putting his hood up, and leaving the store. [Petitioner] made no objection to this testimony at trial. In addition to [Detective] Mills' testimony, [Victim] testified that he was "one hundred percent" certain that [Petitioner] was the robber and made an in-court identification.
>
> The surveillance video and still shots were admitted into evidence without objection. Likewise, the recorded police interview with [Petitioner] was admitted into evidence and published to the jury without objection. The jeans, boots, and t-shirt seized from [Petitioner] were also admitted into evidence without objection.
>
> [Petitioner] was found guilty of robbery by the jury and sentenced by the judge as a prior offender to 20 years in prison.

(Doc. 20 at Ex. F 3–5).

In his post-conviction proceeding, Petitioner raised numerous claims, including that trial counsel was ineffective for failing to investigate and present alibi witness April Rice at trial, for failing to investigate and challenge Victim's identification of Petitioner, and for failing to submit a jury instruction on out-of-court identifications. (Doc. 20 Ex. I at 19–21).

The Missouri Court of Appeals summarized the evidence at the post-conviction evidentiary hearing as follows:

> At the hearing, trial counsel, [Victim], April Rice, and [Petitioner] testified. Trial counsel explained that her investigator had interviewed Rice and that Rice claimed "she didn't know anything about anything" and "wanted basically to be left out of it." Trial counsel also had some conversations with Rice herself. Trial counsel believed Rice "was not helpful to us at all." In addition, trial counsel reviewed body camera footage of officers talking with Rice and, in that footage, Rice "couldn't account for [Petitioner] during the time of the robbery." According to trial counsel, all the witnesses trial counsel interviewed put [Petitioner] close to the crime scene and described him as drunk and belligerent.

> Rice denied being interviewed by [Petitioner]'s defense team and claimed she would have been available to testify at [Petitioner]'s trial. Rice testified that she lived three or four blocks from the convenience store—about a 15-minute walk from her home. According to Rice, [Petitioner] was at her house the night of the robbery and they drank alcohol. She could not say for certain whether [Petitioner] robbed the convenience store, but claimed [Petitioner] was with her when she went to bed and was there when she woke up. Rice acknowledged she had multiple prior convictions and had been drinking on the night of the robbery.
>
> As to [Petitioner]'s show-up identification claim, trial counsel explained she decided "to steer clear" of [Victim]'s pre-trial identification of [Petitioner] and keep it out because the identification was close in time to the robbery and [Victim] was confident [Petitioner] was the right person. Trial counsel testified she believed such evidence "would be strengthening [Petitioner's] identification if [she] went into that" and she "wanted the jury to think that the identification of [Petitioner] was three years after the fact, not the following morning."
>
> [Victim] also testified at the evidentiary hearing. He had "[n]o question whatsoever" that [Petitioner] was the man who committed the robbery. According to [Victim], the show-up identification did not influence his identification of [Petitioner] at trial.

(Doc. 20 Ex. L at 3–4).

In his direct appeal, Petitioner raised two points. First, Petitioner argued that the "trial court plainly erred in permitting [Detective] Mills to identify [Petitioner] as the person in the convenience store surveillance video" because Detective Mills' testimony "that the man in the surveillance video was [Petitioner] was an opinion that invaded the province of the jury on the ultimate issue to be determined[.]" (Doc. 20 Ex. C at 12). Second, Petitioner argued that the "trial court plainly erred by not *sua sponte* declaring a mistrial or issuing a curative instruction following the presentation of the recording of [Detective] Mills' interview with [Petitioner]" because, therein, "[Detective] Mills repeatedly referred to [Petitioner]'s prior police encounters" and thus the recording "improperly referred to other uncharged criminal acts not before the jury[.]" (Doc. 20 Ex. C at 11). The Missouri Court of Appeals affirmed the trial court's judgment, reasoning that

Petitioner "failed to demonstrate manifest injustice or a miscarriage of justice in either instance." (Doc. 20 Ex. F at 3).

Petitioner filed a Rule 29.15 motion for post-conviction relief. (Doc. 20 Ex. H at 15, 303). There, Petitioner asserted 40 claims of ineffective assistance of counsel, (Doc. 20 Ex. H-1 at 2–19); 25 claims of "abuse of discretion of the trial court," (Doc. 20 Ex. H-1 at 19–26); 29 claims of "prosecutorial misconduct," (Doc. 20 Ex. H-1 at 26–37); 14 claims of "inadmissible hearsay/ police misconduct/ improper investigation," (Doc. 20 Ex. H-1 at 38–42); four claims of "misidentification/ inconsistent and conflicting statements," (Doc. 20 Ex. H-1 at 42–43); twelve claims regarding "sustained limine motion/ violations warranting mistrial," (Doc. 20 Ex. H-1 at 44–45); eleven claims regarding "*Brady* violations and denial of favorable exculpatory evidence," (Doc. 20 Ex. H-1 at 45–47); and eight claims purportedly involving "newly discovered evidence/ new evidence," (Doc. 20 Ex. H-1 at 47–49).

After an evidentiary hearing, the state post-conviction motion court denied each claim. (Doc. 20 Ex. H-3 at 45). The motion court considered all of Petitioner's claims—except the 40 claims of ineffective assistance of counsel—to be abandoned because Petitioner presented no evidence related to those claims. (Doc. 20 Ex. H-3 at 44).

As already mentioned, in appealing the motion court's ruling, Petitioner raised three claims alleging the motion court erred in denying his motion because trial counsel was ineffective for failing to present alibi witness Rice and for failing to challenge Victim's identification of him. (Doc. 20 Ex. I at 19–21). The Missouri Court of Appeals affirmed the motion court's judgment. (Doc. 20 Ex. L at 1. 6, 7).

Petitioner filed a timely petition for a writ of habeas corpus (pursuant to 28. U.S.C. § 2254) in this Court on May 16, 2025. (Doc. 1). Petitioner purports to raise 30 grounds for relief. The first

five claims he enumerates; the remaining 25 claims he incorporates by reference to previous proceedings. In his 30 claims, Petitioner alleges his trial counsel was ineffective:[1]

1. for failing to object to the introduction into evidence of an allegedly prejudicial recording of the investigating officer's interview with Petitioner. (Doc. 1 at 5).

2. for failing to object to "cumulative hearsay statements" made during the investigating officer's trial testimony. (Doc. 1 at 7).

3. for failing to investigate five different alibi witnesses: (3a) April Rice; (3b) Josh Rice; (3c) Adam Thurman; (3d) Anjie Grey, and (3e) Patrick Huey. (Doc. 1 at 8).

4. for failing to investigate and present evidence about a "suggestive out-of-court identification process" used to identify Petitioner. (Doc. 1 at 10).

5. for choosing a trial strategy whereby trial counsel consented to the exclusion of information about the out-of-court identification process discussed in Claim 4. (Doc. 1 at 13–14).

6. for "[f]ailing to submit a certain jury instruction to the jurors regarding the identification process used to identify [Petitioner] prior to trial." (Docs. 1 at 15–16; 20 Ex. H-3 at 3) (post-conviction motion claim number two).

7. for failing to investigate alibi witnesses: (7a) April Rice; (7b) Josh Rice; (7c) Adam Thurman; (7d) Anjie Grey, and (7e) Patrick Huey. (Docs. 1 at 16; 20 Ex. H-3 at 3) (post-conviction motion claim number three).

8. for failing to "review certain evidence, police report[s]/ discovery with [Petitioner] in advance of trial." (Docs. 1 at 16; 20 Ex. H-3 at 3) (post-conviction motion claim number four).

---

[1] This Court adopts Respondent Richard Adams' formulation and numbering of the issues and sub-issues for the sake of continuity with the parties' briefs.

9. for failing to object to "hearsay testimony of Detective Mills during [Petitioner's] trial." (Docs. 1 at 16; 20 Ex. H-3 at 3) (post-conviction motion claim number five).

10. for failing "to object to the alleged victim bringing video of the robbery into the court because [Petitioner] had no opportunity to view the video in full." (Docs. 1 at 16; 20 Ex. H-3 at 3) (post-conviction motion claim number six).

11. for "failing to submit to [the] jury a robbery [second degree] instruction instead of the stealing instruction as a lesser-included offense of robbery [first degree]." (Docs. 1 at 16; 20 Ex. H-3 at 3) (post-conviction motion claim number nine).

12. for failing "to inform [Petitioner] of evidence [the] state planned on presenting at trial." (Docs. 1 at 16; 20 Ex. H-3 at 4) (post-conviction motion claim number ten).

13. for (13a) failing "to submit items that were used or potentially to be used as evidence for D.N.A. testing," and (13b) "failing to employ a voice specialist." (Docs. 1 at 17; 20 Ex. H-3 at 4) (post-conviction motion claim number eleven).

14. for (14a) "failing to send State's attorney a verified witness list" and (14b) "failing to secure the attendance of [Petitioner's] alibi witnesses at trial." (Docs. 1 at 17; 20 Ex. H-3 at 4) (post-conviction motion claim number twelve).

15. for "failing to submit certain identification evidence that would [have been] favorable to [Petitioner]." (Docs. 1 at 17; 20 Ex. H-3 at 4) (post-conviction motion claim number 13).

16. for "failing to request jurors be permitted to take notes [during Petitioner's trial]." (Docs. 1 at 17; 20 Ex. H-3 at 4) (post-conviction motion claim number 15).

17. during voir dire, particularly regarding venireperson number one. (Docs. 1 at 17; 20 Ex. H-3 at 4) (post-conviction motion claim number 16).

18. for continuing to represent Petitioner even though "a conflict of interest existed between trial counsel and [Petitioner]." (Docs. 1 at 17; 20 Ex. H-3 at 4) (post-conviction motion claim number 17).

19. for failing to properly advise Petitioner "of the specific elements of the crime charged which left [Petitioner] unable to make an informed decision on whether to go to trial." (Docs. 1 at 17; 20 Ex. H-3 at 4) (post-conviction motion claim number 20).

20. for allegedly advising Petitioner "prior to trial that if found guilty at trial, [Petitioner] would only receive a twelve to fifteen year sentence." (Docs. 1 at 18; 20 Ex. H-3 at 5) (post-conviction motion claim number 21).

21. for continuing to represent Petitioner despite "having an excessive case load and lacking the resources to effectively represent him in the case." (Docs. 1 at 18; 20 Ex. H-3 at 5) (post-conviction motion claim number 25).

22. for continuing to represent Petitioner despite their "contentious" relationship. (Docs. 1 at 18; 20 Ex. H-3 at 5) (post-conviction motion claim number 26).

23. for allegedly misleading Petitioner about "her proposed request for [an] extension of time for a mental evaluation and/or new trial counsel." (Docs. 1 at 18; 20 Ex. H-3 at 5) (post-conviction motion claim number 27).

24. for (24a) failing to object to a "blue coat" and a "yellow DeWalt drill," being introduced into evidence at Petitioner's trial and (24b) for "failing to have D.N.A. tests and fingerprinting done on the[se] items." (Docs. 1 at 18; 20 Ex. H-3 at 5) (post-conviction motion claim number 29).

25. for failing "to object to [a] yellow shirt being admitted into evidence" at Petitioner's trial. (Docs. 1 at 18; 20 Ex. H-3 at 5) (post-conviction motion claim number 30).

26. for failing "to object to [a] yellow shirt being admitted into evidence" at Petitioner's trial. (Docs. 1 at 18; 20 Ex. H-3 at 5) (post-conviction motion claim number 31).

27. for failing "to have favorable witnesses called and deposed." (Docs. 1 at 19; 20 Ex. H-3 at 5) (post-conviction motion claim number 33).

28. for "failing to cross-exam[ine] [the] victim [about] prior out-of-court identification." (Docs. 1 at 19; 20 Ex. H-3 at 5) (post-conviction motion claim number 34).

29. for "failing to inform [Petitioner] of the elements of the offense for which he was charged" and failing "to provide [the state] statute to [Petitioner] [about his] robbery offense." (Docs. 1 at 19; 20 Ex. H-3 at 6) (post-conviction motion claim number 38).

30. for failing "to have cigarette butts and lighter found in [a] coat pocket tested for D.N.A." (Docs. 1 at 19; 20 Ex. H-3 at 6) (post-conviction motion claim number thirty-nine).

Only claims 3a, 4, 6, and 7 were raised below and are properly before this Court. 28 U.S.C. § 2254(b); *Coleman v. Thompson,* 501 U.S. 722, 731 (1991); *Sweet v. Delo,* 125 F.3d 1144, 1149 (8th Cir. 1997). This Court will also address claims 5, 15, and 28 because Respondent concedes that those claims were arguably raised below because Petitioner is proceeding *pro se* and held to a more generous pleading standard. *Harris v. Wallace*, 984 F.3d 641, 647 (8th Cir. 2021).

## LEGAL STANDARDS

### I. 28 U.S.C. § 2254

A federal judge may issue a writ of habeas corpus freeing a state inmate if the inmate is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act (AEDPA) constrains a federal court to "exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under AEDPA, a federal court shall not grant relief to a

state inmate "with respect to any claim that was adjudicated on the merits" in the state court proceedings unless the state court's adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). And a "decision is 'contrary to' federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Musser v. Mapes*, 718 F.3d 996, 1000 (8th Cir. 2013) (quoting *Williams*, 529 U.S. at 412–13) (citation modified).

The "unreasonable application" prong of § 2254(d) is "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). An "*unreasonable* application of federal law is different than an *incorrect* application of federal law." *Williams*, 529 U.S. at 365 (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Id.*

But before reaching the merits of a § 2254 habeas claim, "a federal court reviewing a state conviction . . . may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086–87 (8th Cir. 2012) (quoting *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009)). A "state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." *Gordon v. Arkansas*, 823 F.3d 1188, 1196 (8th Cir. 2016) (quoting *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004)). "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him . . . ." *Marcyniuk v. Payne*, 39 F.4th 988, 995 (8th Cir. 2022) (quoting *Coleman*, 501 U.S. at 753). "If a prisoner fails to demonstrate cause, the court need not address prejudice." *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) (citing *Mathenia v. Delo*, 99 F.3d 1476, 1481 (8th Cir. 1996)).

## II. Ineffective Assistance of Counsel

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To demonstrate ineffective assistance of counsel, a petitioner must show that: (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* at 687. To establish deficient performance, a petitioner must demonstrate that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential," and the petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (internal citations and quotations omitted). To show prejudice, the petitioner must show that "there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## DISCUSSION

### I. The Missouri Court of Appeals' merits determinations of claims 3a, 4, 5, 6, 7a, 15, and 28 were not unreasonable.

In each preserved claim,[2] Petitioner alleges, but fails to establish, ineffective assistance of counsel. When applying the first prong of the *Strickland* test for ineffective assistance of counsel, the Court must analyze the alleged ineffective assistance without being influenced by hindsight. *Strickland*, 466 U.S. at 689. The Court must recognize that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* at 690. In applying the second, prejudice prong of the *Strickland* test, "a court making the prejudice inquiry must ask if the [petitioner] has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Id.* The failure to establish either *Strickland* prong defeats a claim of ineffective assistance of counsel. *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

Review is even more exacting in the context of a Section 2254 petition. *See Harrington*, 562 U.S. at 105. The *Strickland* and AEDPA standards are "highly deferential;" "when the two apply in tandem, the review is 'doubly' so." *Id.* (cleaned up). Therefore, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

[2] The preserved claims are: 3a, 4, 5, 6, 7a, 15, and 28.

**A. Claims 3a and 7a are denied because trial counsel's strategy was reasonable.**

In claims 3a and 7a,[3] Petitioner alleges his trial counsel was ineffective for failing to investigate and call alibi witness April Rice. (Doc. 1 at 8, 16). The Missouri Court of Appeals denied this claim on the merits. (Doc. 20 Ex. L at 1, 6).

In denying Petitioner's claim, the Missouri Court of Appeals stated that, contrary to Petitioner's argument, "trial counsel did investigate calling Rice as a witness and had a reasonable trial strategy for not calling her at trial." (Doc. 20 Ex. L at 6). "Trial Counsel . . . spoke with Rice herself . . . Rice could not account for [Petitioner] at the time of the robbery, and trial counsel determined Rice's testimony was not helpful to [Petitioner's] defense." *Id.*

There is a "reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105. Thus, claims 3a and 7a are denied. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]").

**B. Claims 4, 5, 6, 15, and 28 are denied because trial counsel was sufficiently effective.**

In claims 4 and 6, Petitioner alleges his trial counsel was ineffective for failing to present evidence about a "suggestive out-of-court identification process" and failing to "submit a certain jury instruction to the jurors regarding the identification process used to identify [petitioner] prior to trial." (Docs. 1 at 10, 15–16; 20 Ex. H-3 at 3). Again, the state court denied these claims on the merits. (Doc. 20 Ex. L at 1, 6–8).

In denying claims 4 and 6, the Missouri Court of Appeals observed that Petitioner's claim was "premised on the assumption that trial counsel lacked a reasonable trial strategy for failing to introduce" evidence related to the show-up identification. (Doc. 20 Ex. L at 7–8) "Because trial

[3] While listed as two separate claims here, they appear to be identical.

counsel had a reasonable trial strategy for not introducing evidence related to the show-up identification, both points fail." *Id.* The show-up identification was admissible. *Id.* Trial counsel explained that introducing the additional evidence "had the potential to bolster the state's case by strengthening the store clerk's identification." *Id.* "It is a reasonable trial strategy to avoid highlighting potentially disfavorable evidence." *Id.*

In Claim 5, Petitioner alleges trial counsel was ineffective for "agreeing to omitt [sic] the information about" the out-of-court identification process discussed in Claim 4. (Doc. 1 at 13–14). In claim 15, Petitioner alleges trial counsel was ineffective for "failing to submit certain [favorable] identification evidence." (Docs. 1 at 17; 20 Ex. H-3 at 4). In claim 28, Petitioner alleges that trial counsel was ineffective for "failing to cross-exam [sic] victim of prior out-of-court identification." (Docs. 1 at 19; 20 Ex. H-3 at 5).

Petitioner does not seem to present any new information or argument in these claims that is not already addressed in Claims 4 and 6. And like claims 4 and 6, the state court denied these claims on the merits. (Doc. 20 Ex. L at 1, 6–8). For the same reasons already explained regarding claims 4b and 6, trial counsel acted reasonably in not highlighting unfavorable evidence. As the Missouri Court of Appeals stated, "[Petitioner] has failed to satisfy the performance prong of *Strickland*." (Doc. 20 Ex. L at 7–8).

For these reasons, there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Counsel's decision not to introduce certain evidence may be sound trial strategy. *See Jenner v. Class*, 79 F.3d 736, 740 (8th Cir. 1996). Thus, claims 4, 5, 6, 15, and 28 are denied.

## II. All remaining claims are procedurally defaulted.

In Missouri, "a claim [must] be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir.1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)); *see also* Mo. Sup. Ct. R. 29.15(a) ("This Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court for the claims enumerated.").

Respondent correctly contends that Petitioner's remaining claims[4] were not raised before the state appellate court. (Doc. 20 at 89). Petitioner conceded this point when he waived any response to this argument. *See generally* (Doc. 21). Additionally, from this Court's independent review of the state court record, Respondent's argument appears to be accurate. *See generally* (Doc. 20 Exs. F, H, L). By failing to raise these claims "at each step" of review, Petitioner failed to preserve these claims for review by this Court. *Jolly*, 28 F.3d at 53. That is particularly true given that the Missouri Court of Appeals did not review Petitioner's defaulted points for plain error. *See Johnston v. Bowersox*, 119 F. Supp. 2d 971, 979 (E.D. Mo. 2000) ("Where the state court *declines* to conduct plain error review of a defaulted point, the procedural bar must remain intact.").

Also, Petitioner does not meet the strict standards for "cause, prejudice, or actual innocence . . . ." *Gordon*, 823 F.3d at 1196. Rather, Petitioner concedes that he raised the remaining claims in only "one round of judicial process" and offers no reason that his failure to raise these issues on appeal should be excused. (Doc. 1 at 15). Instead, after Petitioner's failure to preserve these claims was highlighted by Respondent, (Doc. 20 at 92–94), Petitioner waived any response

---

[4] These claims include: 1, 2, 3b, 3c, 3d, 3e, 7b, 7c, 7d, 7e, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 29, and 30.

to Respondent's arguments on the basis that his petition spoke for itself. *See* (Doc. 21). Thus, all the remaining claims are procedurally defaulted. *See Jolly*, 28 F.3d at 53.

**III. Even if Petitioner could satisfy the statutory requirements of Section 2254, he has failed to demonstrate that justice requires habeas relief.**

Finally, Petitioner fails to make the necessary independent showing that justice requires the equitable remedy of habeas relief.

The Supreme Court has made clear that habeas relief will be denied any petitioner who does not satisfy both AEDPA and the Supreme Court's equitable precedents. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). Even where AEDPA is fully satisfied, granting habeas is a matter of this Court's discretion. *Id.* at 128. "Foremost among those considerations is the States' powerful and legitimate interest in punishing the guilty." *Id.* at 132 (cleaned up).

Even if Petitioner could satisfy the statutory habeas requirements, he has made no attempt to show that this Court should exercise its equitable discretion to grant habeas relief. Regardless, that justice would require habeas relief on this record is highly unlikely.

**IV. Certificate of Appealability**

The Court has considered whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court"). To issue a certificate of appealability, the Court must find a substantial showing of the denial of a federal right. *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Petitioner

has not made a substantial showing of the denial of a federal right, and the Court will not issue a certificate of appealability.

## CONCLUSION

Because Petitioner has failed to establish that he is entitled to habeas relief under Section 2254 and as a matter of equity, his Petition for Writ of Habeas Corpus is denied. Thus, Petitioner's Request for Summary Judgment (Doc. 21), Petitioner's Pro Se Motion for Summary Judgment (Doc. 22), and Petitioner's Pro Se Request for Hearing (Doc. 23) are denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Request for Summary Judgment (Doc. 21), Petitioner's Pro Se Motion for Summary Judgment (Doc. 22), and Petitioner's Pro Se Request for Hearing (Doc. 23) are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Court will not issue a certificate of appealability.

The Clerk of Court is directed to close this case.

So ordered this 4th day of November 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE